**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 25, 2020

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

     **Re:**    ***United States v. Sharon Hatcher*, 18 Cr. 454 (KPF)**

Dear Judge Failla:

     The Government submits this letter in advance of the sentencing of Sharon Hatcher (the "defendant"). As explained below, the Government respectfully submits that a sentence below the range of 151 to 188 months' imprisonment, as called for by the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), would be sufficient to accomplish the goals of sentencing in this case.

## I.      Offense Conduct

     In 2017 and 2018, the defendant worked with others—including her boyfriend, Jackie Cooper, and their drug supplier, Anthony Corley—to distribute crack cocaine in the West Farms section of the Bronx and in particular the Lambert Houses. *See generally* United States Probation Office's Presentence Investigation Report ("PSR") ¶¶ 29-30. During the course of the conspiracy, the defendant received product from Corley, stored and packaged it in her residence, transacted with customers on a daily basis, and gave proceeds back to Corley. *Id.* In addition, wiretapped communications between Hatcher and Corley confirm that Hatcher used her apartment to cook powder cocaine into crack, which Corley then distributed to others. *Id.* ¶ 30.

## II.     The Defendant's Plea and Applicable Guidelines Range

     Pursuant to an agreement with the Government, the defendant pled guilty on September 11, 2019, to one count of conspiring to distribute crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). PSR ¶ 4. In the plea agreement, the parties stipulated that the advisory Guidelines range is 151 to 188 months' imprisonment, based on the defendant's status as a career offender, which yielded an offense level of 29 and a Criminal History Category of VI. *Id.* ¶ 5. The Probation Office agrees with this calculation. *Id.* ¶¶ 49-79, 134. Even so, Probation recommends a substantial downward variance to a sentence of 84 months' imprisonment. *Id.* at p. 33.

February 25, 2020
Page 2

### III.   Discussion

#### A.   Applicable Law

Although *United States v. Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims."  18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B.   Analysis

The Government respectfully submits that, while several of the sentencing factors set forth above weigh in favor of a lengthy sentence, a sentence *below* the Guidelines range of 151 to 188 months' imprisonment would nevertheless be sufficient to accomplish the goals of sentencing in this case.

*First*, the nature and circumstances of the offense weigh in favor of such a lengthy sentence of incarceration.  Although crack dealing is a simple and tragically common crime, the harm that it causes throughout communities in the Bronx is profound.  Every day, people in this District—as well as their friends, families, and neighbors—are torn apart by drug dealing, use, and addiction.  In the defendant's building (and others impacted by the charged conspiracy), a

February 25, 2020
Page 3

child stepping out of her apartment to walk to school would be met by the overpowering smell of crack cocaine that this defendant cooked on her stove. Drug suppliers (like Anthony Corley), drug dealers (like the defendant), and all types of drug addicts would be wandering in and out of the building, filling the hallways, and yelling to one another at all hours of the day and night. While participating in this conspiracy, the defendant was *not* homeless. Her apartment building was *not* a hollow crack den condemned by the city or rotting in disrepair. Her neighbors— countless law-abiding people trying to work and go to school every day—should *not* have been forced to live their lives next to a base of drug operations. It was the defendant, her co-conspirators, and others like them who, day-in and day-out, engaged in conduct that disturbed the peace of that community.

In recent years, the Lambert Houses and West Farms area were also home to significant violence between and among warring drug dealers and factions. Although younger, more gang-involved dealers were typically responsible for the violent acts themselves, the defendant bears her share of responsibility for participating in the drug market that has given rise to countless robberies, assaults, slashings, stabbings, shootings, and murders. Of course, even people not directly impacted by drug-related violence in the area also suffered serious harm from the defendant's and her co-conspirators' drug business, and indeed, the defendant herself recognizes the devastation that drugs can cause. She represents that many of her own problems in life have flowed from her use of crack cocaine. The defendant perpetuated those same harms by selling the same poison to other people, without regard for the ramifications it would have on their lives.

*Second*, the defendant's criminal history is quite significant. Since 1985, the defendant has had near-constant contacts with the criminal justice system, with 27 total arrests resulting in fifteen reported convictions. *See generally id.* ¶¶ 61-75. Starting with a youthful offender adjudication for assault in 1985 and a robbery conviction in 1986, the defendant has been in and out of prison for her entire adult life, all stemming from her possession and sale of controlled substances. *See id.* While most of her arrests, convictions, and parole violations related to the sale of crack cocaine, the defendant's drug activity was not limited to that single drug; indeed, the defendant's April 2009 arrest arose from her possession 10 bags of heroin, along with 66 bags of crack. *Id.* ¶ 72. After being returned on numerous bench warrants and incurring two new arrests, the defendant was sentenced in 2013 to four years' imprisonment, which the defendant followed with repeated parole violations and another drug arrest in 2016. *Id.* ¶¶ 72-75. Clearly, none of the defendant's many prior run-ins with the law has deterred her from engaging in criminal conduct. This demonstrates the need for a meaningful sentence of imprisonment in this case.

*Third*, a significant sentence is needed to punish the defendant and demonstrate the seriousness of her conduct. Such a sentence is also needed to promote respect for the law and serve to deter the defendant from future crimes—goals that obviously were not accomplished with any of her prior convictions or sentences. Looking beyond the defendant herself, in a case like this, where the defendant was known to be a member of a large conspiracy that was charged federally, there is a significant need for general deterrence—*i.e.*, for others who might participate in the drug trade to see that such activity will result in a significant sentence if prosecuted in federal court. In addition, the sentence imposed must serve to protect the public from the defendant, her co-conspirators, and others who could be deterred upon learning about this case.

February 25, 2020
Page 4

*Finally*, the principal reason the Government acknowledges that a below-Guidelines sentence would be appropriate is to avoid unwarranted sentencing disparities. The defendant's role in the offense was most similar to that of Jackie Cooper, though wire interceptions suggest that the defendant played a more dominant role in their relationship, as she had more interactions with their supplier (Corley), including ones in which she talked about cooking the crack. Moreover, while the defendant has incurred more convictions than her co-defendants, her total arrests (27) are comparable to Lamar Griffin's 23 arrests, Darrell Hudson's 22 arrests, and Jonathan Padilla's 18 arrests—and this defendant is more than 20 years older than all three of these co-defendants. That more of her arrests resulted in convictions appears to be attributable, at least in part, to the fact that the defendant incurred most of her arrests in Manhattan, where cases are often resolved differently than equivalent charges would be in the Bronx. Furthermore, because most of her prior drug conduct occurred in Manhattan and not in the Lambert Houses, it was not "relevant conduct" for Guidelines purposes, thus leading to the career offender designation. Several other defendants in the case (including Corley, Griffin, and Allen Walker) would be career offenders as well, but for the fact that their own many years of drug dealing were part of the same ongoing course of criminality as gave rise to the charges in this case. The Government does not believe, however, that this defendant's drug dealing in Manhattan is materially worse behavior than her co-defendants' years of dealing in the West Farms section of the Bronx. Lastly, the Government credits that this defendant—unlike most of her co-defendants—was a serious drug user throughout her participation in the charged conspiracy, and she suffers from medical conditions that the Court may take into account when determining an appropriate sentence for her.

## IV.    Conclusion

For the foregoing reasons, the Government respectfully submits that the Court can accomplish the goals of sentencing by imposing a sentence below the Guidelines range of 151 to 188 months' imprisonment, consistent with other sentences handed down in this case, while still accounting for the defendant's serious offense conduct and lengthy criminal history.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Frank J. Balsamello / Sarah Krissoff
Assistant United States Attorneys
(212) 637-2325 / -2232

cc:    Stephen Turano, Esq., *counsel for defendant Sharon Hatcher* (by ECF)