UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>SHARON HATCHER,<br><br>                    Defendant. | 18 Cr. 454-10 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

This Order resolves the second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) brought by Defendant Sharon Hatcher. (*See* Dkt. #204, 250). Similar to her prior motion, Ms. Hatcher claims extraordinary and compelling reasons in the confluence of the ongoing COVID-19 pandemic; the harsh conditions of confinement at the Metropolitan Correctional Center (the "MCC") and the Metropolitan Detention Center (the "MDC"), where she was previously housed; the conditions at the Federal Transfer Center in Oklahoma City ("FTC Oklahoma"), where she is currently housed; and her pre-existing medical conditions, which include chronic pulmonary obstructive disease ("COPD"), high blood pressure, clinical obesity, and HIV. By oral decision dated April 16, 2020, the Court denied Ms. Hatcher's first motion, holding that § 3582(c)(1)(A)'s exhaustion requirement could not be waived by a district court without the Government's consent. Having now satisfied the exhaustion requirement, Ms. Hatcher renews her motion for compassionate relief. For the reasons set forth in the remainder of this Order, the Court now grants the motion, resentences Ms. Hatcher to time

served, and orders her release from custody within 72 hours of the date of this Order, pursuant to the conditions outlined herein.

## BACKGROUND

On June 26, 2018, Ms. Hatcher was charged in Indictment 18 Cr. 454 (KPF) (the "Indictment") with one count of conspiracy to distribute and possess with intent to distribute cocaine base, heroin, and marijuana. (Dkt. #157 (Revised Final Presentence Report ("PSR")) ¶¶ 1-2). On September 11, 2019, Ms. Hatcher pleaded guilty to the lesser included offense of Count One of the Indictment, which charged her with conspiring to distribute and to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and which specified a range under the United States Sentencing Guidelines of 151 to 188 months' imprisonment. (*Id.* at ¶¶ 4-5). At her sentencing on March 4, 2020, after considering, *inter alia*, Ms. Hatcher's mental and physical health issues, personal and family history, and relative role in the criminal conspiracy, the Court varied downwardly, sentencing Ms. Hatcher to a term of 52 months' imprisonment, to be followed by a three-year term of supervised release, with a recommendation that she receive mental health counseling and participation in a drug abuse program. (Dkt. #193 (judgment), 216 (transcript)).

On April 5, 2020, citing 18 U.S.C. § 3582(c)(1)(A), Ms. Hatcher filed a counseled motion for temporary release to home incarceration until the COVID-19 pandemic had ended, or in the alternative, seeking bail pending her designation pursuant to 18 U.S.C. § 3141(b). (Dkt. #204). The request was

prompted in large measure by Ms. Hatcher's health conditions, including COPD, HIV, clinical obesity, and high blood pressure. (*Id.*). The Government opposed the application (Dkt. #208), and the Court sought additional briefing from the parties concerning its authority under § 3582(c) and § 3622 (Dkt. #209, 215, 218). At a hearing on April 16, 2020, the Court denied Ms. Hatcher's application, holding that the exhaustion requirement in § 3582(c)(1)(A) could not be waived by a district court without the Government's consent. (Dkt. #234 at 12-13 (transcript); *see also* Dkt. #233). The Court also encouraged Ms. Hatcher to submit an application to the Bureau of Prisons ("BOP") for temporary furlough pursuant to § 3622. (Dkt. #234 at 19 (transcript)).

On June 3, 2020, Ms. Hatcher renewed her request for compassionate release in a second counseled motion, citing the ongoing risk to her health caused by the COVID-19 pandemic and the conditions of her confinement at the MCC. (Dkt. #250). Ms. Hatcher related issues with her COPD and other health concerns that put her at elevated risk should she contract COVID-19, and argued that the MCC's response to the COVID-19 pandemic was inadequate to protect her health. (*Id.*). The Government opposed Ms. Hatcher's request, arguing, among other things, that (i) her decision not to pursue furlough undermined her argument that the risk to her health posed an "extraordinary and compelling reason[]" for compassionate release, especially when considered in conjunction with the COVID-19 protocols implemented by the BOP; (ii) she failed to establish that she would be at lower risk of

3

contracting COVID-19 if released due to a deficient reentry plan; and (iii) a reduction in sentence would undermine the sentencing factors set forth in 18 U.S.C. § 3553(a). (Dkt. #254). Ms. Hatcher filed her counseled reply on June 16, 2020, addressing the Government's arguments. (Dkt. #258). In the intervening months, Ms. Hatcher's counsel submitted several letters to the Court: (i) providing additional information regarding Ms. Hatcher's more well-developed reentry plan; (ii) keeping the Court apprised of the health risks posed by COVID-19 to Ms. Hatcher; and (iii) sharing information about the conditions in the MCC and MDC. (*See* Dkt. #303, 328, 331).

On March 22, 2021, the Court was informed that Ms. Hatcher received a COVID-19 vaccine and thereafter the Court invited her to file a supplemental submission in light of this information, which counselled submission was filed on April 2, 2021. (Dkt. #331). Ms. Hatcher argued that the "harsh conditions" of confinement "created by the pandemic" that she experienced constituted "extraordinary and compelling reasons" for compassionate release. (*Id.*). Specifically, she argued that (i) she had been prevented from participating in the Residential Drug Abuse Treatment Program (commonly known as "RDAP") by COVID-19, which program "would have taken additional time off her sentence, perhaps making her eligible for her immediate release," and (ii) she "experienced substantial fear and anxiety associated with being incarcerated during this unprecedented period (especially given her co-morbidities), suffered prolonged periods of lockdowns, and was unable to avail herself to the programs typically afforded similar inmates." (*Id.*). Additionally, Ms. Hatcher

noted that she now had a more viable reentry plan, because she had arranged to stay with family if released. (*Id.*).

The Government submitted a supplemental letter in opposition on April 5, 2021. (Dkt. #332). It argued that Ms. Hatcher's inoculation "essentially negates any conceivable 'extraordinary and compelling reason' to release her on account of her health[,]" and disputed that the harsh conditions of Ms. Hatcher's incarceration during COVID-19 rose to a level justifying compassionate release. (*Id.*). The Government conceded that Ms. Hatcher's new reentry proposal "can assist in her reentry and integration into a law-abiding community," but stated that it was "irrelevant" to her motion because Ms. Hatcher "fail[ed] to offer any real basis to release her from custody." (*Id.*).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is

consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress previously delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). In a recent case, however, the Second Circuit held that with respect to a compassionate release motion brought by a defendant (as distinguished from the BOP), the policy statement set forth in U.S.S.G. § 1B1.13 is "not 'applicable,'" and that neither it nor the BOP's Program Statement constrains a district court's discretion to determine what reasons qualify as "extraordinary and compelling." *United States* v. *Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020);[1] *see also United*

---

[1] The Second Circuit remanded the matter to the district court after concluding that the lower court had misapprehended the limits of its own discretion. In so doing, the Court did not define what qualifies as "extraordinary and compelling" under 18 U.S.C.

6

*States* v. *Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release."); *see generally United States* v. *Roney*, 833 F. App'x 580, (2d Cir. 2020) (summary order). That said, while the Court does not consider itself bound by U.S.S.G. § 1B1.13, it will look to that provision for guidance. *See United States* v. *Thrower*, — F. Supp. 3d —, No. 04 Cr. 903 (ARR), 2020 WL 6128950, at *3 (E.D.N.Y. Oct. 19, 2020).

Even if a court determines that "extraordinary and compelling reasons" exist, it must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Harris*, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020). In this regard, the Court again looks to, but does not consider itself bound by, the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).[2]

---

§ 3582(c)(1)(A), other than to recall the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *United States* v. *Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

2    The § 3142(g) factors are largely duplicative of those in § 3553(a), but also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)-(4).

## DISCUSSION

At this stage, the Court does not understand the Government to argue that Ms. Hatcher has failed to exhaust the applicable administrative requirements (*see generally* Dkt. #254), and so it proceeds to address the merits of Ms. Hatcher's application. The issue at hand is whether Ms. Hatcher has identified "extraordinary and compelling reasons" warranting her release, especially in light of her recent inoculation against COVID-19. The Court finds, on the unique circumstances of this case, that she has.

Ms. Hatcher argues that although the risk to her health posed by COVID-19 may have diminished since the time of her vaccination, the conditions of her imprisonment over the last 13 months constitute "extraordinary and compelling reasons" justifying compassionate release. (*See* Dkt. #331). The Government argues that harsh conditions of incarceration occasioned by the COVID-19 pandemic are insufficient to justify compassionate release. (Dkt. #332). The Court has previously found that harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States* v. *Padilla*, No. 18 Cr. 454-6 (KPF), 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020) (denying motion for compassionate release while recognizing that petitioner had "identified sub-optimal conditions of confinement at FCI Elkton during the pandemic"). However, that decision was issued in the fourth, rather than the thirteenth, month of the COVID-19 pandemic. Moreover, it is also true that courts reviewing motions for sentence

modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences "harsher and more punitive than would otherwise have been the case." *United States* v. *Rodriguez*, No. 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020); *see also United States* v. *Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing."); *United States* v. *Ciprian*, No. 11 Cr. 1032-74 (PAE), 2021 U.S. Dist. LEXIS 18698, at *8 (S.D.N.Y. Feb. 1, 2021) (same).

Here, Ms. Hatcher argues that a confluence of circumstances unique to her case — and beyond just the harsh conditions of incarceration occasioned by the pandemic — constitute "extraordinary and compelling reasons" to justify compassionate release.  Specifically, she argues that the harsh period of confinement precluded her from accessing important programs that would have provided her with critical mental health and rehabilitative services.  (Dkt. #331).  Additionally, Ms. Hatcher argues that this period of incarceration was more severe because she experienced "substantial fear and anxiety" of death or severe illness due to the confluence of her serious co-morbidities and COVID-19.  (*Id.*).  She also points to her viable reentry plan, her good behavior during her term of incarceration, and the fact that she has now served over half of her

9

term of incarceration. (*See* Dkt. #250, 258, 303, 328, 331). The Court agrees that additional factors, in conjunction with the harsh conditions of confinement that Ms. Hatcher has experienced for the past 13 months, distinguish this petition for compassionate release and justify granting Ms. Hatcher's motion.

In fact, due to the extreme lockdown conditions at the MCC and the MDC, Ms. Hatcher has been unable to receive mental health care, drug abuse treatment, and other important services that the Court envisioned her receiving while incarcerated. (*See* Dkt. #331; *see also* Dkt. #216 at 34-35 (transcript)). The Court believes these services to be critical to her physical and mental health, and to her ability to reenter society as a productive and law-abiding citizen. (*See* Dkt. #216 at 12-15, 32-35 (transcript)). *Cf. United States* v. *Gonzalez*, No. 19 Cr. 90 (VAB), 2020 WL 7024905, at *7 (D. Conn. Nov. 30, 2020) (granting motion for compassionate release and explaining that "given [petitioner's] demonstrated need for intensive mental health treatment," "the challenging circumstances of the day (a raging pandemic and serious health risks to an inmate), and the absence of meaningful programming for possibly the duration of the term of incarceration make release the lesser of two undesirable options").[3] While harsh conditions of confinement alone are

---

[3] Ms. Hatcher also argues that the Court should consider that "Ms. Hatcher was a viable and willing candidate for the Residential Drug Abuse Treatment Program ("RDAP"), which would have taken additional time off her sentence, perhaps making her eligible for her immediate release." (Dkt. #331). While the Court carefully calculated Ms. Hatcher's sentence with the understanding that she would receive services to assist her with drug addiction and other mental health issues, "[i]n no way did the Court tie the sentence it imposed to the possibility of (or potential consequences flowing from) [Ms. Hatcher's] competition of [RDAP]; indeed, Supreme Court precedent prohibits it from so

insufficient, given Ms. Hatcher's serious mental and physical health issues, deprivation of these services for such a prolonged period of time rises to the level of "extraordinary and compelling reasons" for compassionate release in this instance. Indeed, when coupled with the extreme lockdown conditions and heightened serious risk of severe illness or death, the deprivation of mental health and other support services must have taken a severe toll on Ms. Hatcher's mental and physical health. *Accord United States* v. *Cruz*, No. 18 Cr. 81 (SRU), 2021 WL 1268253, at *7 (D. Conn. Apr. 6, 2021) ("Cruz has served a significant part of that three-year period of incarceration in extremely harsh conditions … in an environment where he has been exposed daily to the risk of a deadly virus — an especially daunting experience for someone with underlying medical conditions such as Cruz's."); *United States* v. *Ng Lap Seng*, No. 15 Cr. 706 (VSB), 2021 WL 961749, at *6 (S.D.N.Y. Mar. 15, 2021) (granting compassionate release after considering, *inter alia*, harsh conditions of confinement during the pandemic, fact that petitioner had served a significant portion of his sentence, and health threat posed by COVID-19); *Mcrae*, 2021 WL 142277, at *5 ("The Court's judgment is that the remaining 11 months that Mcrae is scheduled to serve in prison are significantly offset by the unexpected rigors that Mcrae has experienced during the more than 10 months he has spent in prison during COVID-19.").

---

doing." *United States* v. *Padilla*, No. 18 CR. 454-6 (KPF), 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020) (citing *Tapia* v. *United States*, 564 U.S. 319, 321 (2011)).

Nor would granting Ms. Hatcher's motion undermine the sentencing factors set forth in 18 U.S.C. § 3553(a). Ms. Hatcher's offense was serious and deserving of the 52-month term of imprisonment she received. But as explained above, the Court did not envision Ms. Hatcher to serve this term of imprisonment in near-total lockdown, without the mental health and other support programs that the Court believes to be critical to her health and ability to reenter society. *See United States* v. *Garcia*, — F. Supp. 3d —, No. 11 Cr. 989 (JSR), 2020 WL 7212962, at *3 (S.D.N.Y. Dec. 8, 2020) ("The Court plainly must consider the risk that Garcia could grow ill or die in custody when assessing the 'kinds of sentences available,' as well as whether a sentence reflects 'just punishment' and whether the sentence will provide Garcia with needed medical care, training, and other correctional treatment."). Furthermore, Ms. Hatcher has now served more than half of her 52 months' term of imprisonment, and during that time has demonstrated good behavior and has taken advantage of programming and services offered prior to the onset of the pandemic. (*See* Dkt. #250). Thus, the policy goals this Court sought to vindicate in sentencing Ms. Hatcher would be achieved by releasing her now to a period of home incarceration as a special condition of supervised release, during which she can receive, *inter alia*, the mental health, drug rehabilitation, vocational, and other support she needs. As such, the factors just articulated, taken together with Ms. Hatcher's serious health conditions and well-documented mental health issues, serve to make the term of imprisonment served to date sufficiently severe to adequately punish Ms.

12

Hatcher for her undoubtedly serious criminal activity. *Cf. Ng Lap Seng*, 2021 WL 961749, at *6 (granting compassionate release after determining that "the actual severity of [petitioner's] sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing." (internal quotation marks omitted) (quoting *Rodriguez*, 2020 WL 5810161, at *3)).[4]

Accordingly, the Court GRANTS Ms. Hatcher's motion for compassionate release and reduces her term of imprisonment to that of time served. For three years from the date of her release, Ms. Hatcher shall be subject to all the mandatory conditions, standard conditions, and special conditions of supervised release from the original judgment and sentence in this case. In addition, the Court orders the BOP to release Ms. Hatcher within 72 hours of the date of this Order on the following conditions, which are special conditions of supervised release additional to those previously imposed:

1. Ms. Hatcher shall be subject to home incarceration, to be enforced by location monitoring technology at the discretion of the Probation Department, at the residence of her niece in Connecticut, for the

---

[4] The Government argues that Ms. Hatcher's "COVID-19 vaccination essentially negates any conceivable 'extraordinary and compelling reason' to release her on account of her health." (Dkt. #332). Some Courts have held that receiving a COVID-19 vaccination sufficiently obviates the health risks of COVID-19. *See, e.g., United States* v. *Pabon*, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *3 (S.D.N.Y. Feb. 16, 2021). However, there is still uncertainty over the effectiveness of the different vaccines in preventing various new strains of COVID-19, and the Court is wary of endorsing this argument without further research and analysis of the effectiveness of vaccines over time and in connection with different co-morbidities. Because the Court has already determined that Ms. Hatcher's unexpectedly harsh conditions of confinement — and the concordant deprivation of critical mental health and other support services — over the past thirteen months provide sufficiently "extraordinary and compelling" circumstances warranting compassionate release, the Court declines to determine whether a COVID-19 vaccination obviates health risks posed by COVID-19 in this case.

      first six months following the date of her release.  Installation of location monitoring technology will take place after a 14-day quarantine period (described in paragraph 2 below) has been completed.  During the period of home incarceration, Ms. Hatcher must remain at her approved residence except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true emergency, and except as necessary to obtain essentials, which requires prior notice to and approval by the Probation Department.

2. In light of the COVID-19 pandemic, Ms. Hatcher upon release must self-quarantine at the approved residence for 14 days, except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true emergency.

3. Ms. Hatcher shall arrange with relatives to provide essentials during this 14-day period; if such an arrangement is impossible, she shall request permission from the Probation Department to obtain essentials on her own, which she shall not do without the Probation Department's approval.

4. Ms. Hatcher is to possess or have access to a phone that will allow video conferencing by the Probation Department.  This phone will be monitored by the Probation Department per the special condition previously imposed.

5. During the period of home incarceration, Ms. Hatcher shall commence treatment services as ordered in the March 4, 2020 Judgment.

6. Ms. Hatcher shall contact Supervisory U.S. Probation Officer Kevin Mulcahy (cell phone: (646) 210-4075) upon her release.[5]

The Government is directed to transmit a copy of this Order to the BOP.

The Clerk of Court is directed to terminate the motions pending at docket entries 250, 258, 303, 328, and 331.

SO ORDERED.

Dated: April 19, 2021
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[5] The Court is imposing the first condition to impose just punishment, avoid unwarranted disparities, and recognize the seriousness of the offense. The remaining conditions are imposed to allow proper supervision by the Probation Department.